UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

GEORGE METAXOTOS,

        Plaintiff,

   - against -

Jo ANNE B. BARNHART, Commissioner of
Social Security,

        Defendant.

----------------------------------------X

04 Civ. 3006 (RWS)

O P I N I O N

A P P E A R A N C E S:

    CENTER FOR DISABILITY ADVOCACY RIGHTS, INC.
    Attorneys for Plaintiff
    841 Broadway, Suite 605
    New York, NY 10003
    By:  CHRISTOPHER JAMES BOWES, ESQ.
        Of Counsel

    HONORABLE MICHAEL J. GARCIA
    United States Attorney for the
        Southern District of New York
    Attorneys for Defendant
    86 Chambers Street
    New York, NY 10007
    By:  SUSAN BRANAGAN, Special Assistant US Attorney
        LORRAINE S. NOVINSKI, Assistant US Attorney
        Of Counsel

11|7|05

**Sweet, D.J.,**

Plaintiff George Metaxotos ("Metaxotos") has moved under Rule 12(c), Fed. R. Civ. P., to vacate the decision of defendant Jo Anne B. Barnhart, Commissioner of Social Security (the "Commissioner") for supplemental security income disability benefits, to find Metaxotos disabled and to remand the action for the calculation of benefits, or, alternatively, to remand to consider new and material evidence. The Commissioner has cross-moved to vacate the decision and to remand and has opposed a finding of disability. For the reasons set forth below, the motions for remand are granted, and the motion seeking a finding of disability is denied.

## Prior Proceedings

Metaxotos applied for disability benefits alleging arthritis as his disabling impairment on May 24, 2000. (See Tr. 86-95.) His application was denied on August 30, 2001. (See Tr. 28-32.) He filed a request for reconsideration on September 17, 2001, (see Tr. 33-34, 35, 117-122), and complained that he continued to experience knee, back, and hip pains. (See Tr. 117.) SSA denied the request for reconsideration on March 27, 2002. (See

Tr. 36-39.[1])  On April 9, 2002, Metaxotos promptly filed an appeal of the March 27, 2002 denial.  (See Tr. 40.)

A hearing was scheduled for May 22, 2003, which was adjourned to July 2, 2003.  Metaxotos and his attorney appeared at the July 2, 2003 hearing and provided testimony regarding his impairments.  (See Tr. 296-316.)  The record was kept open after the hearing to allow Metaxotos's attorney to submit additional evidence in support of his claim.  The Administrative Law Judge ("ALJ") asked the attorney to obtain "some kind of medical report" as well, and the attorney said he would try.  (See Tr. 314-15.) Additional evidence was submitted to the ALJ on August 28, 2003.

By notice of decision dated August 30, 2003, the ALJ denied Metaxotos's claim for benefits.  (See Tr. 9-19.)  The ALJ agreed that Metaxotos suffered from severe osteoarthritis of the knees and hepatitis C and that these impairments caused functional limitations which would prevent him from performing his past relevant work as a painter and piano mover.  However, the ALJ determined that Metaxotos retained the ability to perform the full range of sedentary work.  (See Tr. 18.)  She used the Commissioner's medical vocational rules and considered his ability to perform sedentary work, his age (49 1/2), education (high

---

[1] Note that SSA made its decision to deny the reconsideration on February 21, 2002.  However, it did not send its notice of that determination until five weeks later.

school), transferrable work skills (none), and relied on medical vocational rule 201.21 to deny the claim.

Metaxotos appealed to the Commissioner's Appeals Council. By notice dated February 21, 2004, the Appeals Council denied his appeal. (<u>See</u> Tr. 4-7.)

This action was filed on April 20, 2004 seeking to reverse the Commissioner's decision and to remand for a calculation of benefits.

The instant motion and cross-motion were marked fully submitted on June 22, 2005.

## The Administrative Record

Metaxotos was born in New York City on March 12, 1954. He did not graduate high school but eventually did obtain a general equivalency diploma in 1996. He worked in the past as a house painter and a piano mover. Metaxotos suffers from severe arthritis of the knees, back and neck, as well as hepatitis C and depression.

The records of the Valley Hospital Clinic covered treatment for bilateral knee pain from March to May 2000. An x-ray taken on April 3, 2000 revealed "marked narrowing of the medial compartment of each knee . . . consistent with bilateral

osteoarthritis." The diagnostic impression was "bilateral severe osteoarthritis" and "left knee loose bodies." (See Tr. 169-178.)

Metaxotos reported that he sustained extensive multiple body injuries, including injuries to his knees, from a car accident in 1979. He reported that he was told in 1995 that he was a candidate for "TKR" (total knee replacement) but was using alcohol and drugs at that time and failed to follow up properly. He received Darvocet and Vicodin for pain management. (See Tr. 172, 175.)

The Brooklyn Hospital records revealed treatment for bilateral knee pain from November 2000 to March 2001. (See Tr. 179-193.) A knee x-ray done on November 8, 2000 reportedly revealed "advanced degenerative changes involving both compartments of knees." (See Tr. 187.) A December 29, 2000 x-ray of the knee was consistent with post-traumatic degenerative osteoarthritis. (See Tr. 190.)

Clinical examination revealed crepitus and synovial thickening of the knee. Metaxotos was not taking medication other than Motrin around this time but it was also noted that his Medicaid had yet to be approved. He was also in the process of quitting heroin at the time. He complained of an inability to sleep because of pain. He was prescribed Vioxx for the arthritis as well. (See Tr. 185-86.)

4

On March 2, 2001, Dr. Emilio Del Priore wrote a letter indicating Metaxotos had "late stage osteoarthritis." Dr. Del Priore reported that Metaxotos was not able to participate in heavy physical activity and that he should be involved only with "sedentary roles." (See Tr. 193.)

Records from Methodist Hospital from June 2001 reported that Metaxotos complained of feeling overwhelmed and expressed some thoughts about suicide. He was unable to recall how he had been thrown out of a crisis center. He complained of pain in his legs and hips and was taking Tylenol #3 for pain. He was discharged after it was determined that he was not a risk to himself. (See Tr. 198-203.)

Records from Lincoln Hospital in June 2001 stated that Metaxotos was being treated for lower back and knee pain. (See Tr. 210.) At this time his medications included Flexeril and Tylenol #3. (See Tr. 206.)

Records from Cabrini Hospital included a January 2002 x-ray of the lumbosacral spine revealing spondylosis at L4-L5 and L5-S1. An x-ray of the knees revealed bilateral moderate to severe osteoarthritis.

In March 2002, Metaxotos had a "left total knee arthroplasty" (i.e., an artificial knee implant) done at Cabrini

5

Hospital. (See Tr. 278-81.) He had the same procedure done on the right knee in May 2002. (See Tr. 284.)

Dr. Marc Ross provided a July 15, 2003 letter in which he stated that Metaxotos was unable to work due to restricted mobility and difficulty with walking. Dr. Ross based this opinion upon his consideration of Metaxotos's condition post-surgery and his complaints of back and shoulder pain. He reported that Metaxotos was using Vicodin every eight hours for pain management. His gait was antalgic without a cane and he was "unable to kneel or bend." (See Tr. 275-76.)

On July 30, 2001, Dr. John Sawicki examined Metaxotos on behalf of the Social Security Administration for purposes of assessing his claim for disability benefits. Metaxotos reported injuring his knees, low back and neck in 1979. Metaxotos complained of knee pains, back pain and "numbness into left arm and fingers." He said he had difficulty standing, sitting and bending. (See Tr. 213-15.)

On examination, Dr. Sawicki noted "paraspinal tenderness and left reapezius tenderness" along the cervical spine. (Tr. 214.) There was also paraspinal tenderness of the thoracic and lumbar spine with left sided lumbar tenderness noted. Straight leg raising was done to 70 degrees and was positive bilaterally. (See

id.)  Range of motion of the right knee on extension was to 135 degrees and 120 degrees to the left. He was noted to be bowlegged.

Dr. Sawicki noted that Metaxotos was slow in dressing and undressing and had difficulty putting on his socks and shoes. He transferred slowly from a seated to a standing position. He was able to walk slowly without his cane. Dr. Sawicki provided no assessment of Metaxotos's ability to sit, stand, walk, lift or carry.

Non-examining SSA consultative physician Dr. Howard Goldbas reviewed the exhibit file as it existed on August 10, 2001. Dr. Goldbas concluded that the complaints of knee, back and hip pain were due to arthritis and that Metaxotos's complaints of pain were partially credible. (See Tr. 221.) He determined that Metaxotos could stand and/or walk for only 2 hours in an 8 hour day; sit for about 6 hours; lift 10 pounds frequently and 20 pounds occasionally. (See Tr. 217.) He determined that Metaxotos could never perform kneeling and crawling but that he could stoop and balance occasionally. (See Tr. 218.) He advised that he should avoid concentrated exposure to extreme cold, wetness and humidity. (See Tr. 220.)

Consultative examining physician Dr. Mario Mancheno examined Metaxotos on January 3, 2002 for the SSA. He noted complaints of injury to the cervical spine (CS) and lumbosacral

spine (LSS) with subsequent knee pains. Metaxotos was taking Vioxx and Tylenol #3 at the time of the examination. (See Tr. 230.)

Dr. Mancheno observed no difficulty in dressing and getting on the examination table. Gait was reportedly normal. He had no difficulty toe/heel walking.

On examination Dr. Mancheno observed "stiffness of right and left paravertebral muscles" in the neck. (Tr. 231.) There was tenderness noted at C4 to C7 on the right and left paraspinal areas. Dr. Mancheno noted crepitus and tenderness of both knees. He reported "some tenderness noted from L3 to S1 of left and right paraspinal areas of the lower back." An x-ray of the lower spine revealed disc space narrowing at L4-L5 and L5-S1 consistent with degenerative joint disease of the back. (See id.)

Dr. Mancheno stated that his findings were consistent with a discogenic disorder of the lumbosacral and cervical spine and arthritis of the knees. He advised that he felt there was a mild impairment in lifting and carrying, standing and walking, pushing and pulling, and sitting. Tr. 233.

One of SSA's physicians made a non-examining consulting report on February 12, 2002 relating to the one done by Dr. Goldbas. Tr. 249-55. This report is identical to the one Dr. Goldbas completed except that lifting and carrying was limited to

less than 10 pounds frequently and 10 pounds occasionally. (See Tr. 250.)

## The Standard For Judicial Review

Judicial review of the Commissioner's final decision requires "two levels of inquiry." See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). First the court must determine whether the correct legal principles were applied. Id.; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("Failure to apply the correct legal standards is grounds for reversal."). Second, the court must decide whether substantial evidence supported the Commissioner's determination. Johnson, 817 F.2d at 985.

In reviewing the administrative ruling, the court does not make a de novo determination whether the plaintiff is disabled but does, however, "undertake 'plenary review' of the administrative record to determine whether substantial evidence supports the denial of benefits." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).

The Commissioner follows a five step sequential evaluation when determining disability:

> First the [Commissioner] considers whether the claimant
> is currently engaged in substantial gainful activity
> [Step One]. If he is not, the [Commissioner] next
> considers whether the claimant has a "severe" impairment
> which significantly limits his physical or mental ability
> to do basic work activities [Step Two]. If the claimant
> suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the
> regulations. If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without
> considering vocational factors such as age, education,
> and work experience; the [Commissioner] presumes that a
> person who is afflicted with a "listed" impairment is
> unable to perform substantial gainful activity [Step
> Three]. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the
> claimant's severe impairments, he has the residual
> functional capacity to perform his past work [Step Four].
> Finally, if the claimant is unable to perform his past
> work, the [Commissioner] then determines whether there is
> other work the claimant can perform [Step Five].

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see also 20
C.F.R. § 416.920 et seq.

A reviewing court must be satisfied that the claimant has
had a "full hearing under the Secretary's regulations and in
accordance with the beneficent purposes of the Act." Gold v.
Secretary of Health, Education and Welfare, 463 F.2d 41, 43 (2d
Cir. 1972); Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980).
The ALJ is obliged to remember that "[t]he Social Security Act is
a remedial statute which must be 'liberally applied'; its intent is
inclusion rather than exclusion." Marcus v. Califano, 615 F.2d at
29 (quoting Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir.
1975) (citation omitted)); see also Rivera v. Schweiker, 717 F.2d
at 723; Gold, 468 F.2d at 41.

**Remand Is Appropriate**

The parties agree that the ALJ made several errors in the adjudication of Metaxotos's claim. They disagree, however, on the appropriate remedy.

According to Metaxotos, the ALJ failed to address properly his subjective complaints of pain and failed to take into proper account his medications and his daily activities. In addition, he contends that the ALJ failed to develop the record with respect to the report of Dr. Ross and ignored evidence of functional limitations. In addition and alternatively, Metaxotos has contended that a remand is warranted to consider an October 22, 2003 letter by Dr. Dinia Rozen and December 2003 MRIs.

The Social Security Act authorizes a court to remand a case to the Commissioner for further proceedings. See 42 U.S.C. § 405(g). The fourth sentence of this section provides as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

Id. The court may properly remand a case to the Commissioner for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), when the Commissioner failed to correctly apply the law and

11

regulations. See Melkonyan v. Sullivan, 501 U.S. 89, 101 (1991). As the Second Circuit has stated, "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Commissioner for further development of the evidence." Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).

The Commissioner has acknowledged that in adjudicating this case, the ALJ did not fully develop the record with respect to treating source medical evidence. An ALJ has a duty to develop the record. See 20 C.F.R. § 416.912(d).

In particular, the Commissioner has conceded that the ALJ failed to either make initial contact or to re-contact Metaxotos's treating sources when she was required to do so. Metaxotos sought treatment for his mental impairment at St. Mark's Place Institute of Mental Health, Inc. ("SMPIMH"), from November 27, 2001 until at least July 14, 2003. Tr. 236, 241, 274. It was noted by Renata Novak Ziarnik, Metaxotos's psychotherapist, that he saw Dr. Benjamin Bukholts, a psychiatrist at the SMPIMH during that time. Id. Further, Beatu Jackowska, a counselor at SMPIMH, reported that Metaxotos had been scheduled to see a psychiatrist there once a month. Tr. 241, 274. Both Ms. Ziarnik and Ms. Jackowska opined that Metaxotos could not work, but those opinions were rejected because they were non-medical sources. See Tr. 236, 241, 274. The

12

record does not indicate that the ALJ attempted to contact Dr. Bukholts, a treating psychiatrist, for treatment notes, records or opinions and contains no medical evidence from Dr. Bukholts.

The record does contain a single report of a mental status examination performed by a physician, possibly a psychiatrist, at SMPIMH.[2] See Tr. 224-29. The signature on this report is illegible but the letters "MD" appear after the signature. The report was therefore ambiguous in one essential aspect, and the ALJ was required to re-contact the source for additional information or clarification. See 20 C.F.R. § 416.912(e).

Furthermore, the Commissioner has conceded that the contents of this report should have led the ALJ to re-contact the treating source. The ALJ referred to this report and was aware that it was a treating source report. See Tr. 14, 15. It was particularly important that she re-contact the source, because she rejected the opinions of Metaxotos's therapists at SMPIMH, Beatu Jackowska and Renata Ziarnik, as non-medical sources. See Tr. 15.

In addition, the Commissioner has noted that the record does not contain all reports of treatment for Metaxotos's physical impairment. In his application filed on May 24, 2000, Metaxotos

---

[2] The report could have been signed and completed by Dr. Bukholts, but his name appears nowhere on the report. See Tr. 224-29.

identified the Valley Hospital Clinic as a treating source. Tr. 90. He again identified this clinic as a treating source on September 27, 2001 when he requested reconsideration of his claim. Tr. 118. The record contains reports and office notes for the period up to May 17, 2000 that were submitted by Metaxotos's attorney on July 20, 2000. Tr. 169, 170-78. There is no indication that the ALJ attempted to contact this source for updated information or records for the period between July 2000 and September 2001.

The Commissioner has agreed with Metaxotos that the ALJ also did not re-contact Dr. Ross for clarification of his opinion and instead rejected it based on a comparison with the opinions of consultative physicians. See Tr. 18. The ALJ had requested additional records from Dr. Ross. Tr. 314. Metaxotos complied with that request and obtained a report and opinion from Dr. Ross. See Tr. 275-76. However, the ALJ rejected that report as inconsistent, but did not re-contact Dr. Ross for clarification or additional information.

The Commissioner has noted Metaxotos's contention that his case should be remanded for consideration of new and material evidence. See 42 U.S.C. § 405(g) (sixth sentence); Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) (evidence must be new, material and good cause must exist for failure to submit it earlier). While not conceding that these documents constitute

14

"new" and "material" evidence, the Commissioner has noted that these reports will be evaluated on remand and may assist in proving Metaxotos's allegations of disability at that time.

When both parties agree that the ALJ's decision was flawed, remand is appropriate.

## A Finding Of Disability By The Court Is Not Appropriate

The parties dispute whether or not the evidence in the record compels a finding that Metaxotos is disabled within the meaning of the Act. It is undisputed that he has some physical, or exertional, limitations, but whether this limitation prevents all work activity is not clear.

Although the ALJ accepted Dr. Ross' opinion that Metaxotos should not bend or kneel, Tr. 275, and specifically found, as a factual matter, that Metaxotos could not engage in any kneeling or bending, Tr. 18, 19, the legal significance of her own finding is disputed.

According to Metaxotos, the Social Security Ruling provides that a finding of disabled is appropriate for a claimant

who is limited to sedentary work and who cannot perform any bending.[3]

> An ability to stoop occasionally; i.e., from very little up to one third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

SSR 96-9.

According to the Commissioner, the language from the ruling demonstrates a complete inability to stoop would usually result in a finding of disability and the final sentence of the quoted material expressly provides that a vocational expert should be consulted when the claimant is "limited to less than occasional stooping." The Commissioner has argued that if a finding of disability is mandated, there would, of course, be no reason to obtain vocational evidence. The meaning of the ALJ's finding that Metaxotos was able to do "no bending" is contested and thereby

---

[3] The Commissioner defines "stooping" as the "bending the body downward and forward by bending the spine at the waist." See SSR 83-10; 83-15; 83-14; Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (per curiam) (stooping means to "bend forward from the waist"; internal quotation marks and citation omitted).

compels remand rather than a determination of disability by the Court.

The appropriate remedy when faced with an ambiguous finding is to remand the case to the Commissioner for clarification of the ambiguity. See, e.g., Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (remanding for further proceedings where ALJ's rationale was not clear).

Finally, Metaxotos contends that the medical vocational rules compel a finding of disability as of the August 29, 2003 decision. Metaxotos has argued that since he was six months and fourteen days shy of his 50th birthday at the time of the August 29, 2003 decision, the Commissioner's regulation provides that SSA will not "mechanically" apply the age categories within the medical vocational rules in a "borderline situation." See 20 C.F.R. § 416.963(b); Heckler v. Campbell, 461 U.S. 458, 462, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); 43 Fed. Reg. 55349, 55359 (1978) (comments accompanying the promulgation of the predecessor to section 404.1563(a) provide that agency 'practice over the years, in fact, has been in agreement with the comment that the passage of a few days or months before the attainment of a certain age should not preclude a favorable disability determination.").

The Social Security Administration, in its Hearings, Appeal and Litigation Law Manual (commonly referred to by its

acronym "HALLEX"), a resource to be used by its employees, has set forth the following two-part test for identifying borderline age situations:

> 1. Determine whether the claimant's age is within a few days or a few months of a higher age category.
>
> 2. If so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."
>
> If the answer to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age.
>
> If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age (Use of the higher age category is not automatic.) To decide which age category to use, take a "sliding scale" approach. Under this approach, the claimant must show progressively more additional vocational adversity(ies) -- to support use of the higher age -- as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.

(HALLEX 5-302(A)).

The regulations and the HALLEX do not clearly define when a borderline situation exists. Some courts which have addressed this regulation have held that six months is within the rule. <u>Cox v. Apfel</u>, 1998 U.S. App. LEXIS 31318, No. 98-7039, 1998 WL 864118, at *4 (10th Cir. Dec. 14, 1998) (because plaintiff was within six months of next age category at time decision issued, ALJ erred by not addressing whether plaintiff was of borderline age); <u>Smith v.</u>

<u>Barnhart</u>, 78 Soc. Sec. Rep. service 116, 2002 U.S. Dist. LEXIS 1480, No. 00 Civ. 2643, 2002 WL 126107, at 2-4 (N.D. Ill. Jan. 31, 2002) (noting that the cases tend to treat claimants who are within six months of next age category as borderline); <u>Freundt v. Massanari</u>, 76 Soc. Sec. Rep. Service 407, 2001 U.S. Dist. LEXIS 18063, No. 00 C 456, 2001 WL 1356146, at *17-20 (N.D. Ill. Nov. 2, 2001) (six months and 12 days from next age category should have triggered inquiry by ALJ concerning borderline situation); <u>Tousignant v. Apfel</u>, 55 Soc. Sec. Rep. Service 609, 1998 U.S. Dist. LEXIS 3825, No. 97 C 4150, 1998 WL 142415, at *5 (N.D. Ill. Mar. 26, 1998) (finding that 10 months would seem to be borderline); <u>Roush v. Heckler</u>, 632 F. Supp. 710, 711-12 (S.D. Ohio 1984) (six months borderline).

Courts have further held that because it is the Commissioner who bears the burden at step five, it is her burden to establish that a case is not a borderline case where she relies on the medical vocational rule to deny a claim. <u>See</u> <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1133 (10th Cir. 1998); <u>Pickard v. Comm'r of Soc. Sec.</u>, 224 F. Supp. 2d 1161, 1170 (D. Tenn. 2002); <u>Graham v. Massanari</u>, 2001 U.S. Dist. LEXIS 6415, at *24 (D. Ill. 2001).

Here, Metaxotos was found not disabled based on application of medical vocational rule 201.21. Tr. 20 (finding 11). This rule applies for claimants who 1) are limited to sedentary work; 2) are aged 45 through 43; 3) have a high school

failed to address the implications of the timing of her decision, a remand is appropriate.

Since remand is required, and rather than have this Court announce a rule to define the edge of the borderline, further proceedings upon remand should include consideration of the borderline application.

## Conclusion

The motion and cross motion for remand are granted. The motion to find disability is denied.

It is so ordered.

New York, NY
November **3** , 2005

ROBERT W. SWEET
U.S.D.J.